THE VILLAGE OF LISLE, Plaintiff-Appellant, v. THE VILLAGE OF
WOODRIDGE *et al.*, Defendants-Appellees.

Second District   No. 2—88—1148

Opinion filed December 20, 1989.

Robert T.C. Kay, Assistant Village Attorney, of Lisle, and Thomas W. Fawell, of Katten, Muchin & Zavis, of Oak Brook (John J. Curry, Jr., of counsel), for appellant.

Thomas W. Good, of Gorski & Good, of Wheaton (Gerald M. Gorski, of counsel), for appellee Village of Woodridge.

Peter M. King, of Jay A. Canel, P.C., of Chicago (Jay A. Canel, of counsel), for appellee Forest City-Harris Group.

JUSTICE REINHARD delivered the opinion of the court:
Plaintiff, the Village of Lisle (Lisle), filed an 11-count complaint in

the circuit court of Du Page County naming as defendants the Village of Woodridge (Woodridge) and Forest City-Harris Group (Forest City). Counts I, II and IV sought specific performance, permanent injunction and damages for breach of contract, respectively. The remainder of the complaint sought: damages for civil conspiracy (count III), damages for tortious interference with economic expectation (count V), a constructive trust (count VI), declaratory judgment on four separate bases (counts VII through X), and damages for tortious interference with a contract (count XI). On September 6, 1988, the circuit court dismissed counts VI, VIII, IX, and X pursuant to sections 2—615 and 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619) and count III pursuant to section 2—615. Count V was dismissed without prejudice as to Forest City with leave to amend. On October 27, 1988, the circuit court granted defendants' motions for summary judgment as to counts I, II, IV, V, VII and XI. On November 22, 1988, Lisle appealed the October 27, 1988, order granting summary judgment in favor of Woodridge and Forest City.

Although Lisle raises numerous issues on appeal, the two issues dispositive of this appeal are: (1) whether this court has jurisdiction to consider the trial court's dismissal of counts III, VI, VIII, IX and X; and (2) whether the boundary-line agreement between Woodridge and Lisle prohibited Woodridge's subsequent agreement to purchase and annex property on Lisle's side of the boundary line.

Lisle and Woodridge are municipalities located in Du Page County. In 1979, they entered into a written boundary-line agreement which provides, in pertinent part:

"2. Neither Lisle nor Woodridge shall act to annex or exercise any zoning or subdivision control authority beyond the boundary line established by this Agreement."

On March 7, 1987, Woodridge's board of trustees authorized by ordinance the purchase of an approximately 140-acre parcel of land, part of which lies on the Lisle side of the boundary line established by the boundary-line agreement. This parcel was purchased from Forest City, the beneficial owner of a land trust which consisted in part of the 140-acre parcel. That purchase was conditioned on Woodridge and Forest City entering into an annexation agreement as well as Woodridge approving a zoning ordinance for the subject property.

On May 3, 1988, Lisle filed its 11-count, third amended complaint. Pursuant to Woodridge and Forest City's motions, the trial court dismissed with prejudice counts III, VI, VIII, IX and X on September 6, 1988. That order was not final and appealable as it did not contain the language required by Supreme Court Rule 304(a) (107 Ill. 2d R.

304(a)), and Lisle did not appeal.

On October 27, 1988, the circuit court granted summary judgment as to the remaining six counts of Lisle's complaint. The court found that paragraph 2 of the boundary agreement prohibiting the parties from annexing beyond the boundary line was invalid as an unauthorized assumption of power, relying on *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979, 497 N.E.2d 319. On November 22, 1988, Lisle filed its notice of appeal. The notice of appeal states:

"PLAINTIFF-APPELLANT, Village of Lisle, an Illinois municipal corporation, by its attorneys KATTEN MUCHIN & ZAVIS, hereby appeals to the Appellate Court of Illinois, Second District, from the Judgment Order entered on October 27, 1988 by the Circuit Court of the Eighteenth Judicial Circuit, Du Page County, Illinois, Civil Division I, The Honorable Judge John W. Darrah presiding. A copy of said Judgment Order is marked Exhibit A, attached hereto and made a part hereof.

Plaintiff-Appellant prays that the Judgment Order entered against Plaintiff-Appellant and in favor of Defendants-Appellees upon Defendants-Appellees' Motions for Summary Judgment be reversed or, in the alternative, reversed and remanded for further proceedings consistent with the opinion of the Appellate Court.

Plaintiff-Appellant further prays that this cause be remanded to the Circuit Court of the Eighteenth Judicial District, Du Page County, Illinois, for entrance of an appropriate Judgment Order which grants Plaintiff-Appellant relief requested in its complaint and for other relief to which it is entitled."

Woodridge contends that this court lacks jurisdiction to consider the September 6, 1988, dismissal order because Lisle's notice of appeal refers only to the October 27, 1988, order granting summary judgment in favor of Woodridge and Forest City. Relying on *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380, Lisle responds that the omission of the September 6 order from the notice of appeal was a technical error which does not deprive this court of jurisdiction as the September 6 order was a procedural step which ultimately produced the final judgment of October 27, 1988.

Supreme Court Rule 303(c)(2) states:

"(c) Form and Contents of Notice of Appeal.

* * *

(2) It shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (107 Ill. 2d R. 303(c)(2).)

This court held in *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153, that, where a plaintiff's notice of appeal was from a summary judgment order as to certain counts and did not refer to an earlier order dismissing other counts, a reviewing court lacks jurisdiction to consider the earlier dismissal order that was not otherwise timely appealed. (126 Ill. App. 3d at 1062.) In a slightly different factual circumstance, our supreme court has held, citing Rule 303(c)(2), that a notice of appeal which referred to the dismissal order as to one defendant but not the earlier dismissal order as to another defendant did not bestow jurisdiction on the reviewing court to consider the separate, earlier dismissal order not mentioned in the notice of appeal. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 442, 490 N.E.2d 1252.) Similarly, in *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 398 N.E.2d 3, the supreme court held that the failure to mention an earlier order dismissing a counterclaim in the notice of appeal seeking review of a summary judgment order deprived the reviewing court of jurisdiction to consider the dismissal order. 78 Ill. 2d at 61.

■ This court's decision in *Long v. Soderquist* is consistent with the supreme court's application of Rule 303(c)(2) to similar circumstances and is directly controlling in this case. Lisle's notice of appeal refers only to the October 27, 1988, summary-judgment order and requests relief from that order only. As such, this court lacks jurisdiction to consider any issues raised by the September 6, 1988, dismissal order. In so holding, we note that although Lisle could not appeal the September 6 order prior to entry of summary judgment on October 27, 1988, as the order lacked the requisite Rule 304(a) language regarding finality and appealability, Lisle could have appealed the order following the October 27 summary judgment as a final order had it included reference to the dismissal order in its notice of appeal.

■ Lisle's reliance on *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380, is misplaced. In *Burtell*, the court held that a notice of appeal need not specify a particular order to confer jurisdiction if the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed. (76 Ill. 2d at 434, 394 N.E.2d at 383.) The unspecified judgment is reviewable if it is a " 'step in the procedural progression leading' " to the judgment specified in the notice of appeal. (76 Ill. 2d at 435, 394 N.E.2d at 383.) The earlier order sought to be reviewed but not mentioned in the notice of appeal was an order for an accounting, and the notice of appeal referred only to the judgment which was based on the accounting. 76 Ill. 2d at 431, 394 N.E.2d at 381.

The present case is distinguishable from *Burtell* in that the earlier order dismissing five counts of Lisle's complaint was not a step in the procedural progression leading to the summary-judgment order as to the other six counts. It was unnecessary for the circuit court to have entered the dismissal order in order for it to enter subsequently the summary judgment as to the other counts. Thus, the summary-judgment order as to the remaining counts does not directly relate back to the dismissal order, and, as such, *Burtell* is not controlling in this case.

As to the remaining counts at issue in this appeal, Lisle contends that the boundary-line agreement is valid and enforceable and that the trial court therefore erred in granting summary judgment in favor of Woodridge and Forest City based on the contract's invalidity. Specifically, Lisle first argues that the agreement is authorized by article VII, section 10, of the Illinois Constitution (Ill. Const. 1970, art. VII, §10) and section 5 of the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1987, ch. 127, par. 745). Second, Lisle maintains that the agreement prohibits the acquisition of that portion of the 140-acre parcel on Lisle's side of the boundary line. Third, Lisle contends that Woodridge is estopped from asserting the invalidity of the agreement because Woodridge had enjoyed the benefits of and sought compliance with the agreement in the past. Finally, Lisle urges this court to modify or reverse its decision in *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979, 497 N.E.2d 319, or, at the very least, distinguish it from this case.

Woodridge and Forest City respond that the trial court correctly ruled that paragraph 2 of the agreement prohibiting annexation was invalid and therefore Woodridge was not prohibited by the agreement from purchasing that portion of the 140-acre parcel located on Lisle's side of the boundary line. Particularly, they argue that pursuant to section 11—12—9 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9) Lisle and Woodridge lacked the authority to enter into an agreement prohibiting each other from annexing property. Woodridge and Forest City further maintain that *Village of Long Grove v. Village of Kildeer* is dispositive of whether Woodridge and Lisle were authorized by law to prohibit annexation by the other. Additionally, they posit that article VII, section 10, of the Illinois Constitution and section 5 of the Intergovernmental Cooperation Act do not create an independent source of municipal authority which would validate that portion of the boundary-line agreement prohibiting annexation. Woodridge and Forest City also contend that the agreement does not expressly prohibit the purchase of property on Lisle's side of the

boundary line. Finally, they argue that Woodridge is not estopped from raising the invalidity of the agreement.

■ We find it necessary to carefully frame the precise issue before this court. Although Lisle suggests that the boundary-line agreement is implicated because of Woodridge's purchase of the subject property and that such purchase is prohibited by the agreement, we conclude that the question of Woodridge's purchase is itself not at issue in this case. Although Woodridge did purchase the subject property in this case, the deed provides, *inter alia*, that Woodridge and Forest City must execute and deliver an annexation agreement and Woodridge pass an ordinance to zone the subject property within 90 days or the subject property would revert. Therefore, for the purchase to ultimately come to fruition, an annexation agreement and zoning ordinance would first have to exist. Thus, under these facts we do not view the purchase by Woodridge as a separate act independent of an annexation. Rather, the purchase is wholly dependent upon Woodridge and Forest City achieving an annexation agreement. Thus, we characterize the purchase conditional upon an annexation agreement as "an act to annex." It is, therefore, expressly encompassed by paragraph 2 of the boundary-line agreement, which provides that neither municipality shall "act to annex."

■ We note at this point that although Woodridge had not annexed the property at the time this suit was filed, Lisle has asked for a declaratory judgment as to its rights under the agreement, including its right to enforce the agreement as to any future annexation of the subject property by Woodridge. Furthermore, the deed requires an annexation agreement between Forest City and Woodridge, otherwise the property will revert to Forest City. Thus, the issue of annexation under the agreement is properly before us.

The boundary-line agreement states, in pertinent part:

"WHEREAS, Woodridge and Lisle recognize the need to provide for logical municipal boundaries and areas of municipal authority between their respective municipalities in order to plan effectively and efficiently for growth and potential development between their communities and conservation of available resources for their respective citizens; and

WHEREAS, Woodridge and Lisle have authorized, by ordinance, the execution of this Agreement as an exercise of their respective authority and in accordance with the intergovernmental cooperation provisions of the Constitution of the State of Illinois of 1970;

NOW, THEREFORE, in consideration of the mutual prom-

ises contained herein and in further consideration of the recitals set forth above, it is hereby agreed between Woodridge and Lisle, as follows:

1. That in the unincorporated area lying between the two municipalities the boundary line, for municipal government planning, subdivision control, official maps, ordinances, and other municipal purposes shall be as follows: [remainder contains description of the boundary line].

2. *Neither Lisle nor Woodridge shall act to annex or exercise any zoning or subdivision control authority beyond the boundary line established by this Agreement.*

3. Each municipality shall actively oppose any attempt to effectuate an annexation to its respective municipality which would have the effect of changing the boundaries established under this Agreement.

4. This Agreement shall not be construed so as to limit or adversely affect the right of either municipality to file a statutory objection to proposed rezonings within one and one-half (L-½) [*sic*] miles of its corporate limits.

5. This Agreement shall be binding upon, and shall apply only to relations between Woodridge and Lisle. Nothing herein shall be used or construed to affect, limit, or invalidate the boundary claims of either Woodridge or Lisle insofar as such claims shall relate to any municipality which is not a party to this Agreement.

6. Neither Lisle nor Woodridge shall directly or indirectly seek any modification of this Agreement through court action and this Agreement shall remain in full force and effect until amended or changed by the mutual agreement of both respective corporate authorities.

7. Should any provisions of this Agreement be declared invalid for any reason, such invalidation shall not affect other provisions of this Agreement which can be given effect without the invalid provisions and to this extent the provisions of this Agreement are to be construed as severable.

8. This Agreement shall be construed in accordance with the laws of the State of Illinois and shall be published by the respective municipalities and recorded or filed with appropriate County Recorders, County Clerks, and others as their interests may appear." (Emphasis added.)

The crucial language relevant to this appeal is contained in paragraph 2 of the agreement. To the extent the agreement prohibits

Woodridge from acting to annex the subject property, we find it to be invalid and unenforceable. Our decision in *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979, 497 N.E.2d 319, is controlling on this issue. In *Village of Long Grove* we held that there was no statutory authority for municipalities to enter into a boundary-line agreement prohibiting annexation. (146 Ill. App. 3d at 980-82, 497 N.E.2d at 320-21.) That holding applies equally to an agreement prohibiting an act to annex. Thus, the boundary-line agreement in this case is invalid to the extent that paragraph 2 purports to prohibit any act to annex by either Lisle or Woodridge.

Neither are we persuaded by the recent amendment to section 11—12—9 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9) now expressly authorizing boundary-line agreements prohibiting annexation. That amendment states that it is effective "[o]n and after September 24, 1987," and, as such, has no effect on this case. Furthermore, such prospective language contradicts Lisle's argument that the amendment reflects the legislature's intent to have allowed boundary-line agreements prohibiting annexation under the previously unamended version of section 11—12—9.

■ Lisle also argues that Woodridge is estopped from asserting the invalidity of the agreement because Woodridge enjoyed the benefits of and sought compliance with the agreement in the past. While it is true that a municipality may not avoid enforcement of a contract based on some irregularity in the formation of the contract if it has otherwise properly entered into the contract and the other party has substantially performed its obligations, it is equally true that a contract entered into by a municipality which lacks the authority to do so is *ultra vires* and void. (*McGovern v. City of Chicago* (1917), 281 Ill. 264, 280-82, 118 N.E. 3.) Where, as here, the municipality lacks the power to contract, then the municipality may avoid enforcement of the contract as void, even though the other contracting party has performed satisfactorily. See *McGovern*, 281 Ill. at 280-82, 118 N.E. at 9.

■ Finally, Lisle contends that the agreement is valid pursuant to article VII, section 10, of the Illinois Constitution (Ill. Const. 1970, art. VII, §10) and section 5 of the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1987, ch. 127, par. 745). Article VII, section 10, of the Illinois Constitution clearly authorizes municipalities to enter agreements to "exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance." (Emphasis added.) (Ill. Const. 1970, art. VII, §10.) The Intergovernmental Cooperation Act provides, in pertinent part: "Any one or more public agencies may contract with any one or more other public agencies to

perform any governmental service, activity or undertaking which any of the public agencies entering into the contract is *authorized by law to perform.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 127, par. 745.) Both article VII, section 10, of the Illinois Constitution and section 5 of the Intergovernmental Cooperation Act authorize municipalities to enter into cooperative agreements, but only to the extent that the agreement encompasses subject matter over which the municipalities already have authority. Article VII, section 10, uses the word "power," and section 5 limits the agreement to those functions a municipality is "authorized by law to perform." Clearly, neither article VII, section 10, nor section 5 gives municipalities a separate source of authority to perform functions not otherwise authorized by the Constitution or statute. Accordingly, we reject Lisle's argument that article VII, section 10, and section 5 grant municipalities the authority to enter into agreements which give the municipalities powers which they otherwise do not have.

We therefore affirm the order of the circuit court of Du Page County granting summary judgment in favor of Woodridge and Forest City and dismiss the appeal as to the remaining counts.

Affirmed in part and dismissed in part.

UNVERZAGT, P.J., and McLAREN, J., concur.