ELK GROVE TOWNSHIP RURAL FIRE PROTECTION DISTRICT *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF MOUNT PROSPECT, Defendant-Appellant.

First District (5th Division)   No. 1—90—1220

Opinion filed April 10, 1992.

Jack M. Siegel, and Arthur M. Holtzman, of Pedersen & Houpt, P.C., both of Chicago, for appellant.

Richard A. Cowen and Lynne R. Ostfeld, both of Cowen, Crowley & Nord, P.C., of Chicago, for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

On March 28, 1990, the circuit court granted the motion of Elk Grove Township Rural Fire Protection District for summary judgment, declaring the intergovernmental fire service agreement be-

tween it and the village of Mount Prospect null and void. The village now appeals the judgment of the trial court.

On January 9, 1989, plaintiff fire protection district (the District) filed a complaint for declaratory judgment challenging the validity of the November 7, 1988, intergovernmental fire service agreement (the Agreement) between themselves and the Village of Mount Prospect (the Village). The Agreement at issue provided that effective May 1, 1990, the Village would take over all fire protection and emergency ambulance services previously being furnished by the District to its residents. The Agreement would be binding on both parties for an initial period of 10 years, after which the District would have successive options to extend it for additional periods of 10 years each. The Agreement also contained the following provisions:

"1. That the District would at all times levy the maximum tax rate allowed by law.

2. That the District would turn over all tax revenues to the Village (less 110% of that amount necessary for the continued operation of the District).

3. That during the term of the Agreement, the District would not oppose any disannexation of territory now in the District. The District also agreed to voluntarily dismiss all pending lawsuits challenging the annexation of property to any municipality.

4. That the District would use its best efforts to sell the real estate it now owns. (The only real estate the District owned was the property on which its fire station stood.)"

Since there were no disputed issues of material fact, the trial court issued its summary judgment as a matter of law. This judgment was based on the pleadings, the attached agreement, and supporting affidavits. Count I of the complaint alleged that the Agreement was void or voidable because it required the public officials of the District to surrender or delegate in advance their governmental authority to exercise their judgment or discretion to decide issues relating to the levy of taxes, defense of litigation and sale of assets. It further stated that the Agreement required an illegal surrender of governmental authority in that it required the levy and turnover of the maximum tax permitted by law without regard to what the Village's actual cost in providing such services would be. Count II claimed that the Agreement was void or voidable because it results in the District taxing its residents and donating a substantial part of the tax revenues to another governmental unit. It additionally claimed that the village manager of Mount Prospect stated that the approximate cost of providing

service would be $250,000 less than the taxes required to be levied against the District. Count III was subsequently dropped by the plaintiffs and is not at issue here. Count IV alleged that the Agreement provided a *de facto* dissolution of the District in contravention of the statute.

Defendant denied virtually all allegations except admitted that the District was to turn over tax revenues to the Village (count II) and that the District had agreed to refrain from challenging efforts to disannex property (count IV). In its motion for summary judgment, filed March 14, 1990, defendant alleged that the Agreement was valid and enforceable and that the District had the power to levy maximum tax rates allowed by law for the duration of the Agreement, had the power to waive its rights to object to annexations during the term of the Agreement, and had the power to sell real estate during the term of the Agreement. It further alleged that the transfer of tax revenues pursuant to the Agreement was lawful consideration for the Agreement and that there was no *de facto* dissolution of the District.

Based on these pleadings and supporting affidavits and memoranda, the trial judge on March 28, 1990, found the Agreement between the parties void as against the public policy of this State and granted the plaintiffs' motion for summary judgment. Defendant appeals the judgment of the trial court.

■■ ■ On appeal, the Village maintains that the Agreement between the parties is well supported by constitutional as well as statutory authority. As a basis for this contention, the Village cites article VII, section 10, of the Illinois Constitution (Ill. Const. 1970, art. VII, §10) in addition to the official comments to this section; the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1987, ch. 127, par. 743) and the Fire Protection District Act (Ill. Rev. Stat. 1987, ch. 127½, par. 31a). It is the Fire Protection District Act which initially provides for the creation and organization of fire protection districts. This act provides that the board of trustees of a fire protection district has among its powers the power to do the following: pass all necessary ordinances, rules and regulations for the management of the fire protection district; contract with any corporation organized to furnish fire protection services; and accumulate funds for the building, repairing and improving, etc., of fire houses. (Ill. Rev. Stat. 1987, ch. 127½, pars. 31a, 26, 34.) The Village argues that this panoply of powers is broadened by article VII, section 10, of the Illinois Constitution, which clearly authorizes municipalities to enter agreements "to obtain or share services and to exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance." (Ill.

Const. 1970, art. VII, §10(a).) The Intergovernmental Cooperation Act (Ill. Rev. Stat. 1987, ch. 127, par. 743), which is also relied on for its broadening powers, provides in pertinent part: "Any power or powers, privileges or authority exercised or which may be exercised by a public agency of this State may be exercised and enjoyed jointly with any other public agency of this State ***."[1]

■■ The relied-on statutory and constitutional authorities do encourage governmental cooperation and do grant broad powers to municipalities or governmental units. They do grant each of the parties here the authority to provide fire protection and emergency medical service to its constituents. The cited authorities also provide each of the parties here with the power to contract for fire protection and emergency medical service. They further provide the authority to levy taxes for such purposes. What they do not provide, however, is the authority to execute blanket tax levies for extended periods of time. Illinois case law does not support the proposition that taxes may be levied for needs beyond the ensuing year; rather, it provides that tax levies may be adopted after yearly enactment of a budget and appropriate ordinances. (See Ill. Rev. Stat. 1987, ch. 85, par. 803.) Furthermore, taxes are not to be levied for possible future needs, or with the view towards accumulating funds for future needs. (See *People ex rel. Reeves v. Bell* (1923), 309 Ill. 387, 141 N.E. 187 (which held that a board of education is without authority to levy a tax for building purposes no part of which is needed for the ensuing year but which is levied to raise a fund for possible future use).) In *Mathews v. City of Chicago* (1930), 342 Ill. 120, 174 N.E. 35, the court allowed a levy for future purposes when these purposes were for known and limited expenses. Likewise in *People ex rel. Harding v. Chicago & Northwestern Ry. Co.* (1928), 331 Ill. 544, 163 N.E. 355, the court allowed the county board to levy taxes two years in advance only because it was for the purpose of paying bonds which were to come due at that time. In the case at bar, the Village argues that the contractual provision which allows the District to levy the maximum tax allowable by law for 10 years is not a tax for possible future needs, but is really the

---

[1]Counsel for the Village maintains that Dillon's rule (that municipalities only possess express and necessarily implied powers) has been abolished with respect to both article VII, section 10, of the Illinois Constitution as well as the Intergovernmental Cooperation Act, thus allowing governmental units all powers which are not explicitly prohibited. While there is conflicting case law regarding the applicability of Dillon's rule to non-home-rule units, the resolution of this issue is not critical to the interpretation of the agreement at bar.

agreed-upon consideration for the rendering of fire service to the District. This is a distinction without merit as the tax which is to be levied is clearly for the future fire protection services to be rendered.

■ Moreover, the Agreement at issue does not correlate the amount of taxes to be raised with the cost of the services to be rendered. This deprives the taxpayers of their right to have separately stated the purposes for which the public money is appropriated or expended. (See *People ex rel. Wilson v. Wabash Ry. Co.* (1938), 368 Ill. 497, 14 N.E.2d 650.) As the trial court noted, taxation is a practical business which calls for accuracy in estimating funds needed. A tax levied in amounts largely in excess of requirements of a particular purpose during the ensuing year is illegal and void. (See *People ex rel. Brenza v. Morrison Hotel Corp.* (1954), 4 Ill. 2d 542, 123 N.E.2d 488.) Counsel for the Village argues that the cited authority is not relevant, as the *Brenza* court actually found that the accumulation of tax funds for libraries was appropriate, and further that the tax at issue is not largely in excess of the requirements of fire protection. Although counsel is correct that the *Brenza* court approved the accumulation of tax funds for libraries, what he has neglected to note is that the reason the accumulation of tax money was appropriate is because such accumulation was specifically authorized by the library act (Ill. Rev. Stat. 1947, ch. 81, par. 1a), which expressly authorized the accumulation of funds for construction and purchase of libraries. The *Brenza* court specifically noted the general rights of taxpayers to have separately stated the purposes for which public money is appropriated, and the illegality of excess accumulations. Unlike the library act, there is no specific statutory authority which provides for the accumulation of monies to provide fire protection services. Although at present the Village's costs to provide fire protection services are $250,000 less than the District's, the uncertain nature of future costs for the Village to provide this service to the District makes it impossible to tell what the future accumulations might be.

■ For the above-mentioned reasons, we find that although there is statutory and constitutional authority which would allow the District and the Village to enter into a contract for fire protection services and to levy taxes to pay for such services, this particular 10-year contract and tax levy are unsupported by Illinois law. It is by its nature unresponsive to changed conditions and clearly denies prospective administrations and taxpayers any input into future levies as required by law. It is therefore void *ab initio*.

Because the taxing provision alone makes the Agreement void, it is unnecessary for us to consider whether the Agreement is also void

because it is a *de facto* dissolution of the District without a referendum, or whether the District may contractually give up its discretion as to whether or not to sell its real estate, as well as its right not to oppose annexations of its territories by other municipalities.

■ Finally, the Village maintains that the District is estopped from challenging the validity of the fire service agreement. We disagree. Although a municipality may not avoid enforcement of a contract based on some irregularity in the formation of the contract if it has otherwise properly entered into the contract and the other party has substantially performed its obligations, it is equally true that a contract entered into without authority is *ultra vires* and void. (See *McGovern v. City of Chicago* (1917), 281 Ill. 264, 118 N.E. 3.) Where the municipality lacked the initial power to form the contract, as it did in the case at bar, then the municipality may avoid the enforcement of the contract as void, even though the other contracting party has performed satisfactorily. See *McGovern v. City of Chicago* (1917), 281 Ill. 264, 118 N.E. 3. See also *Village of Lisle v. Village of Woodridge* (1989), 192 Ill. App. 3d 568, 548 N.E.2d 1337.

The judgment of the circuit court granting summary judgment to plaintiff is affirmed.

Affirmed.

LORENZ and MURRAY, JJ., concur.