NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230699-U

NO. 4-23-0699

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 13, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GAVIN JONES and GRAHAM DONNELLY, | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Peoria County |
| DENNIS DONNELLY and CATHOLIC CHARITIES | ) | No. 21L150 |
| OF THE DIOCESE OF PEORIA, a Not-for-Profit | ) | |
| Corporation Doing Business in the State of Illinois, | ) | Honorable |
| Defendants-Appellees. | ) | Stewart James Umholtz, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held:* The circuit court did not err in dismissing the complaint with leave to amend or in converting to a dismissal with prejudice following plaintiffs' failure to file within the time granted to amend.

¶ 2   Plaintiffs Gavin Jones and Graham Donnelly filed a 10-count complaint against Dennis Donnelly and Catholic Charities of the Diocese of Peoria (Catholic Charities) (collectively defendants). The circuit court dismissed the counts directed at Catholic Charities but gave plaintiffs 35 days to file an amended pleading. When plaintiffs had filed no amendment six months later, Catholic Charities moved for dismissal with prejudice. Plaintiffs then sought leave to file an amended complaint *instanter*, with the amended complaint attached to the motion. The court denied leave to amend and dismissed the complaint with prejudice.

¶ 3   Plaintiffs appeal, contending that the circuit court erred in dismissing the complaint originally and in later providing that the dismissal was with prejudice. For the reasons that follow,

we affirm.

¶ 4                                          I. BACKGROUND

¶ 5          Plaintiffs initiated this action by filing their 10-count complaint on July 9, 2021. The complaint alleged personal injuries that occurred from purported sexual abuse by Dennis Donnelly during time spent in a "foster care" or "adoptive program" administered by Catholic Charities. The complaint alleged, among other things, that Dennis "was retained, volunteered and was accepted" by Catholic Charities as a foster parent and that Catholic Charities thereafter exercised "direct supervision, control and authority" over Dennis and failed to prevent the sexual abuse from occurring. Further, the complaint alleges the defendants shared the relationship of "agent, servant, employee, partner, associate, joint venturer, co-participant, and/or principal of or with each of the other remaining Defendants." Moreover, Dennis's responsibilities under the alleged arrangement included

> "supervising young people in their activities and daily lives, providing a safe haven for minor children, providing a safe home environment for children to be raised up in, supervising young people in the quest for religious and spiritual understanding, teaching young people to act in a manner consistent with the ideals and teachings of the Roman Catholic Church, and other acts and duties consistent with his role as a spiritual mentor, parent and leader."

¶ 6          Relevant on appeal, the complaint asserted claims against Catholic Charities for negligent hiring (counts 5 and 8), "Negligent Retention/Supervision" (counts 6 and 9), and "Negligent Entrustment/Breach of Fiduciary Duty/*Respondeat Superior*" (counts 7 and 10). Each cause of action was pleaded individually for each plaintiff.

¶ 7          Catholic Charities filed a motion to dismiss, which was heard by the circuit court

on July 14, 2022. Catholic Charities argued, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), that plaintiffs failed to properly plead an employee-employer relationship between Dennis and Catholic Charities to create viable causes of action for the claims discussed above. Further, certain claims were rendered defective by being intermingled with other claims, as a clear recitation of the elements of each claim could not be discerned. Counsel for Catholic Charities asked that if plaintiffs were given leave to amend the pleading, then they should be required to replead their "mishmash" of claims as separate claims under separate counts.

¶ 8        Plaintiffs' response to the motion contended that the required relationship was sufficiently pled in their complaint. Pursuant to state statute "a foster parent is deemed an employee." Further, the terms "employer" and "employee" were unnecessary designations, and the relationship between defendants created an agency relationship and, thus, a duty on behalf of Catholic Charities to fulfill their statutory and common law obligations to be free from negligence and protect the plaintiffs from the harm of their agents. Regarding the structure of the complaint, plaintiffs' counsel pointed to his involvement in a number of other cases involving childhood sexual abuse and opined that the complaint was structured based on his prior experience, but if the claims were to be broken out individually, it would "make the complaint 20 pages longer."

¶ 9        The circuit court granted the motion to dismiss, finding that more detail was needed as to the alleged relationship between the defendants and that the individual causes of action needed to be pleaded within their own counts and not commingled. The court provided that the dismissal was without prejudice and allowed plaintiffs to file an amended complaint within 35 days.

¶ 10        No amendment was filed within the specified 35 days. In fact, six months had

passed after the circuit court's ruling when Catholic Charities finally filed a motion asking the court to convert the prior order to a dismissal with prejudice and make it final and appealable. Plaintiffs responded by requesting leave to file their amended complaint, *instanter*. Regarding Catholic Charities, the proposed amended complaint contained two counts of "Negligent Retention/Supervision" and two counts of "Breach of Fiduciary Duty," one for each plaintiff. The proposed amended complaint did not replead causes of action for negligent hiring, *respondeat superior*, or negligent entrustment. Plaintiffs' motion stated that "Unfortunately, through some type of error occurring within the office for Plaintiffs' attorneys, the First Amended Complaint did NOT get filed timely. Counsel for Plaintiff did not become aware of this event until receiving Defendant's most recent motion stating such."

¶ 11        The circuit court granted Catholic Charities' motion to dismiss with prejudice and denied plaintiffs' motion for leave to file the amended complaint. The record contains neither a report of proceedings nor a bystander's report of this hearing. Plaintiffs subsequently moved for reconsideration of this ruling, attaching an affidavit of plaintiffs' counsel asserting that the attorney had e-mailed the amended pleading to his paralegal to file on August 15, 2022, and was unaware that the pleading was never filed until Catholic Charities sought a dismissal order.

¶ 12        The circuit court denied the motion to reconsider, finding that no new circumstances had been brought to its attention and that all the matters raised in the motion to reconsider were previously addressed when entering the final and appealable order for dismissal.

¶ 13        This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15        On appeal, plaintiffs argue that the circuit court erred in granting Catholic Charities' initial section 2-615 motion to dismiss with leave to amend, contending that they sufficiently

pleaded the causes of action asserted in the complaint. Plaintiffs also argue the court erred in converting its ruling to a dismissal with prejudice following the failure to timely file their first-amended complaint and compounded the error by denying reconsideration of that decision.

¶ 16     Catholic Charities contends that plaintiffs waived their right to contest the initial dismissal order by failing to specify that order in the notice of appeal. It further argues that, even if this court has jurisdiction to review the initial dismissal with leave to amend, the circuit court did not err where plaintiffs failed to allege the required elements of the alleged causes of action. As to the dismissal with prejudice, Catholic Charities argues that the court did not abuse its discretion where plaintiffs failed to file within the 35 days allowed for amendment and in seeking reconsideration, plaintiffs failed to "raise any new issue in their motion and merely attached an attorney affidavit that could have been filed with the original motion for leave."

¶ 17     Before we begin our analysis, we are compelled to observe that plaintiffs' original complaint was beset by a number of issues apparent on its face. It contained 91 common allegations, spread across 24 pages, and incorporated *each* of them into every count, regardless of whether each allegation was legally relevant to each claim. Plaintiffs made the somewhat startling allegation that the relationship between defendants—a foster care agency and a foster parent—was that of "agent, servant, employee, partner, associate, joint venturer, co-participant and/or principal of or with each of the other remaining Defendants." Perhaps this may reflect plaintiffs' genuine uncertainty about whether defendants were, for example, joint venturers, but it seems more indicative of a "kitchen sink" approach to pleading. Additionally, plaintiffs asserted two identical claims in counts 1 and 3 (a defect that was still present in the proposed amended complaint). Finally, plaintiffs joined together *three* separate (and in many respects, unrelated) claims in a single count: two direct claims (negligent entrustment and breach of fiduciary) and one vicarious claim

(*respondeat superior*). There was no apparent recognition of the fact there might be separate pleading requirements for each of these jumbled-together claims. With the knowledge that this was the complaint the circuit court was asked to assess, we now address the specific issues presented.

¶ 18                                   A. Jurisdiction

¶ 19        Turning first to the sufficiency of the notice of appeal, plaintiffs' notice states an intent to appeal from the July 12, 2023, order denying the motion to reconsider the dismissal of the cause with prejudice following plaintiffs' failure to file an amended pleading. Nonetheless, plaintiff's brief argues that the original July 14, 2022, order dismissing their complaint with leave to amend was also in error. Catholic Charities argues that because plaintiffs failed to cite that order in the notice of appeal, and because it was not a step in the procedural progression leading to the July 2023 judgment, this court lacks jurisdiction to review the July 14, 2022, order.

¶ 20        Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) directs that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." However, it is well established that a notice of appeal is to be liberally construed. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22. Our liberal construction of a notice of appeal also allows appellate jurisdiction over orders not expressly mentioned therein "if that order was 'a "step in the procedural progression leading" ' " to the judgment which was specified in the notice of appeal." *Id.* ¶ 23 (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979)).

¶ 21        We find that the order granting the initial motion to dismiss with leave to amend was a step in the procedural progression leading to the eventual dismissal with prejudice; the latter represented the substance of the former, with the only change being that the circuit court deleted

the provision allowing permission to amend. Without the first order, the other would not exist. "Given the interrelationship between the specified and the unspecified orders, the notice of appeal is sufficient to confer jurisdiction on the appellate court to review the propriety of all these orders." *Smock v. Hale*, 197 Ill. App. 3d 732, 738 (1990).

¶ 22     Catholic Charities argues against this conclusion, citing *Village of Lisle v. Village of Woodridge*, 192 Ill. App. 3d 568 (1989). We find *Village of Lisle* distinguishable, as the appellant in that case filed a notice of appeal from an order granting summary judgment on six counts of the complaint. On appeal, however, the plaintiff sought to challenge the dismissal of other counts of the complaint which occurred before the summary judgment ruling. *Id.* at 573. Unlike that case, the circuit court here could not have dismissed the particular counts at issue with prejudice for failure to file an amended complaint without having initially dismissed those same counts, but with leave to amend. *Id.* While in *Village of Lisle*, the counts initially dismissed were separate and distinct from the counts on which summary judgment was entered, here, the second order would have had no meaning without the first order of dismissal. *Village of Lisle* does not detract from our conclusion that we have jurisdiction over plaintiffs' appeal of the July 14, 2022, order.

¶ 23                    B. Dismissal With Leave to Amend

¶ 24     Turning to the merits, plaintiffs allege that the complaint sufficiently pleaded the causes of action against Catholic Charities to survive a motion to dismiss filed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). "A section 2-615 motion to dismiss challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. In reviewing the complaint's sufficiency, this court accepts as true all well-pleaded facts therein and all reasonable inferences that may be drawn from

them, and we view the allegations in the complaint in the light most favorable to the plaintiffs. *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 21; *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. "Only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *Khan*, 2012 IL 112219, ¶ 47.

¶ 25    Illinois requires fact pleading (*Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 424 (1981)), and a complaint must state ultimate facts essential to the cause of action. *Id.*; *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368-69 (2004). Mere conclusions are insufficient under the fact-pleading standard. *Beretta U.S.A. Corp.*, 213 Ill. 2d at 368.

¶ 26    We review *de novo* a judgment granting a motion to dismiss pursuant to section 2-615. *Roberts*, 123594, ¶ 21.

¶ 27                    1. *Counts 5 and 8—Negligent Hiring*

¶ 28    The parties dispute whether plaintiffs' negligent hiring claims alleged sufficient facts to survive the motion to dismiss. To plead a cause for negligent hiring, a plaintiff must establish:

> " '(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.' " *Doe v. Coe*, 2019 IL 123521, ¶ 41 (quoting *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998)).

¶ 29    In claiming that an employment relationship was properly alleged, plaintiffs point to section 1(b) of the State Employee Indemnification Act (5 ILCS 350/1(b) (West 2020)),

contending that, as a matter of law, this provision supports the allegation of an employment relationship between defendants because "any foster parent in the State of Illinois who is approved by [the Illinois Department of Child and Family Services (DCFS)] is indeed an employee for purposes of liability." The statutory section relied on by plaintiffs is the definitions section of the State Employee Indemnification Act (5 ILCS 350/1 (West 2020)). This section serves to clarify the relationship between the *State of Illinois* and foster parents for purposes of indemnification. It does *not* state that foster parents are "employees" or agents for whom their employer or principal would be vicariously liable. See *Nichol v. Stass*, 192 Ill. 2d 233, 239 (2000) (holding that foster parents are independent contractors rather than employees or agents of the state).

¶ 30　　　　More relevant here, the statute relied on by plaintiffs does not establish an employment relationship between Dennis and *Catholic Charities*. Plaintiffs' complaint makes broad allegations about Catholic Charities' mission of "teaching young people to act in a manner consistent with the ideals and teachings of the Roman Catholic Church," but the pleading barely mentions the obvious and important relationship between Catholic Charities and Dennis *as a foster parent*. It is indisputable that a private agency cannot on its own engage in the practice of placing children with foster parents as a private enterprise; that is a matter over which DCFS has sole authority. See 20 ILCS 505/2.1, 7 (West 2020). DCFS might well employ private agencies to assist in its statutory duties, and it is apparent from plaintiffs' complaint that this was Catholic Charities' role here.

¶ 31　　　　Plaintiffs also argue that an employment relationship is unnecessary, asserting that an agency relationship between Dennis and Catholic Charities is sufficient. An agency relationship requires a showing that (1) a principal-agent relationship existed, (2) the principal controlled or had the right to control the conduct of the alleged agent; and (3) the alleged conduct of the agent

fell within the scope of the agency. See *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18. Plaintiffs are apparently asserting a claim of actual agency. A plaintiff relying on a theory of actual agency must plead specific facts establishing a principal-agent relationship and cannot merely plead in a conclusory manner that such a relationship exists. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498 (1996).

¶ 32        *Commerce Bank v. Youth Services of Mid-Illinois, Inc.*, 333 Ill. App. 3d 150 (2002), provides important context when assessing whether a complaint has adequately pleaded a claim seeking to hold a third-party foster care agency responsible for the misdeeds of a foster parent. If the foster-care agency is "merely acting in accordance with DCFS regulations, [it] did not have the right to exercise any more control over the [foster parents] than DCFS would have had if it were providing services directly." *Id.* at 155. *Commerce Bank* was decided following a trial, but it gives an excellent target for a pleader in plaintiffs' position: tell the court what the third party was doing *other than* carrying out the responsibilities delegated to it by DCFS. Absent allegations that the third party "was exercising control over [the foster parents] beyond merely subjecting [them] to DCFS regulations, then an agency relationship" is not properly alleged. *Id.* at 156. Here, plaintiffs have pleaded a number of conclusions, but no *facts* to show that Catholic Charities' control over Dennis constituted more than its exercise of the authority delegated to it by DCFS.

¶ 33        We also find *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, instructive. In *Bogenberger*, a prospective pledge of a fraternity died following "an evening of vodka-laden hazing." *Id.* ¶ 1. The focus on appeal was the dismissal pursuant to section 2-615 of the Code of the plaintiff's fifth-amended complaint seeking recovery under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2012)) and the Survival Act (755 ILCS 5/27-6 (West 2012)). *Id.* ¶¶ 8, 10. Our supreme court noted the elements required to establish an agency relationship (*id.* ¶ 28) and found

that as to the second factor (requirement of control or the right to control), the allegations that the national fraternal organization as alleged principal " 'controlled the activities and conduct' of their local chapters; could 'assist local chapters in the conduct of rush or pledging activities or require alcohol or hazing education;' and had 'the right and the power to expel, suspend or place restrictive remedial conditions on local chapters,' " fell well short of alleging the "control" necessary to establish an agency relationship. *Id.* ¶ 30.

¶ 34 Here, we are presented with a complaint that alleges Catholic Charities' ability or right to control Dennis in a manner that falls below the allegations made in *Bogenberger*. Plaintiffs in this case merely allege that Dennis was under the "management," "direct supervision, control and authority" of Catholic Charities. These conclusory terms are insufficient under the standard of fact pleading. See *Beretta U.S.A. Corp.*, 213 Ill. 2d at 368. In sum, the relationship between defendants in the complaint that was needed to establish a duty of care was pleaded in a conclusory manner, and the circuit court did not err in dismissing the negligent hiring counts with leave to amend.

¶ 35 2. *Counts 6 and 9—Negligent Supervision and Retention*

¶ 36 Regarding counts 6 and 9, the parties engage in argument concerning the relationship between defendants, similar to those discussed above, and whether plaintiffs adequately alleged facts sufficiently showing a relationship between defendants which would give rise to the duties asserted in these counts. We find that counts 6 and 9 suffer from the same defect discussed above. In Illinois, negligent supervision is a claim distinct from a claim for negligent retention. See *Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021) (citing *Doe v. Coe*, 2019 IL 123521, ¶ 49). To state a claim for negligent supervision, a plaintiff must plead that " '(1) the defendant had a duty to supervise the harming party, (2) the defendant

- 11 -

negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries.' " *Coe*, 2019 IL 123521, ¶ 52 (quoting *Doe v. Coe*, 2018 IL App (2d) 170435, ¶ 90.) To state a claim for negligent retention, the plaintiff must plead that (1) the defendant knew or should have known that the harming party had a particular unfitness for the position that would create a danger of harm to third persons, (2) such particular unfitness was known or should have been known at the time of the harming party's retention, and (3) the particular unfitness proximately caused the plaintiff's injury. *Van Horne*, 185 Ill. 2d at 311.

¶ 37    Similar to the negligent hiring claim, plaintiffs make conclusory assertions about the relationship between defendants in an attempt to give rise to the duty essential to the negligent retention or supervision claims. It is necessary to understand the relationship to understand what duties of supervision may have been owed by Catholic Charities. As noted above, there is no basis to conclude that Dennis was Catholic Charities' employee, and plaintiffs' conclusory allegations again fall short of showing that he was its agent. Furthermore, the issue again becomes whether Catholic Charities' supervisory rights over Dennis as a foster parent constituted anything more than its right and obligation to supervise him pursuant to DCFS's delegated authority. Conversely, plaintiffs' complaint is not based on any specific failure of Catholic Charities to comply with the obligations imposed by DCFS. Absent such allegations, the holding of *Commerce Bank* is equally problematic for plaintiffs' negligent supervision claims.

¶ 38    Counts 6 and 9 suffer from an additional defect. Section 2-603 of the Code (735 ILCS 5/2-603(b) (West 2020)) states that "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count" and "each count *** shall be separately pleaded, designated and numbered." Here, plaintiffs attempted to plead multiple claims in a single count for each plaintiff. The Code prohibits pleading claims in such a manner under section

2-603(b). Given that we can affirm dismissal of the counts on any basis supported by the record, we find that the circuit court did not err in dismissing counts 6 and 9 with leave to amend.

¶ 39                                    3. *Counts 7 and 10—Combined Claims*

¶ 40            The plaintiffs' complaint also asserted claims for negligent entrustment, breach of fiduciary duty, and *respondeat superior*—two direct claims, and one vicarious claim—by combining all three claims into a single count per plaintiff. The circuit court dismissed these counts in order that these distinct claims might be pleaded individually in separate counts in an amended complaint. Although plaintiffs argue that these counts should not have been dismissed for commingling the claims, as discussed, the Code clearly prohibits the practice of pleading claims in such a manner. See *id.* Indeed, the commingling of the claims makes it difficult on appeal to assess their sufficiency. The legal theories as presented are so jumbled that it is difficult to identify what the required allegations *are*, much less whether they have been sufficiently made. We hesitate, then, to deconstruct and separate plaintiffs' cojoined claims in order to determine whether the elements of any of them have been adequately pleaded.

¶ 41            Accordingly, the court below did not err in dismissing these counts with leave to amend.

¶ 42                                    C. Dismissal With Prejudice

¶ 43            Plaintiffs next argue that even if the circuit court did not err in dismissing the complaint with leave to amend, it erred in dismissing the complaint with prejudice after the allotted time to amend had passed. In making this argument, plaintiffs fail to articulate the standard of review used to evaluate their claim. See *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69 (noting that the denial of a motion to amend pleadings is reviewed for an abuse of discretion). Instead, they compare the failure to submit an amended complaint within the time

allowed to the failure to attach an affidavit to a complaint in a medical malpractice case as required by section 2-622(g) of the Code (735 ILCS 5/2-622(g) (West 2020)), a strained comparison. This is not a medical malpractice case, and the defect at issue is not a failure to attach a required affidavit or supplemental document to a complaint, but the failure to file the complaint itself.

¶ 44        While we find the argument presented on this point to be unhelpful, a more fundamental issue is the lack of a sufficient record of the circuit court proceedings below. In this appeal, plaintiffs have not provided a transcript, or a suitable substitute, of the proceedings where the court dismissed the complaint with prejudice. It is well established "that in order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Id.* In the absence of a record, we presume the court's order was based on a sufficient factual basis and was entered in conformance with the law. *Id.*

¶ 45        Without a transcript, there is no basis to determine that the circuit court erred. *Id.* at 433 (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)). Under these circumstances, we presume the court had a sufficient basis for the exercise of its discretion to choose not to excuse a late filing.

¶ 46        Moreover, even without a transcript, the six-month delay in filing the amended complaint provides an obvious reason that would support the circuit court's discretionary decision that further indulgence was not appropriate. The court had given plaintiffs an ample 35 days in which to file their amended complaint, but the pleadings lay dormant for five months beyond that reasonable deadline. Note that plaintiffs were required to demonstrate good cause for the extension they sought beyond the initial 35 days pursuant to Illinois Supreme Court Rule 183 (eff. Feb. 16,

2011). The court may consider whether the party's original delinquency was caused by mistake, inadvertence, or attorney neglect, but the ultimate question of whether there is good cause rests in the sound discretion of the circuit court. *New Planet Energy Development LLC v. Magee*, 2020 IL App (4th) 200043, ¶¶ 30-31. There is ample authority suggesting that a significant lapse of time would support the circuit court's decision to dismiss the complaint with prejudice. See *Bosch Die Casting Co. v. Biallas*, 269 Ill. App. 3d 377 (1995); *Nicholson v. Chicago Bar Ass'n*, 233 Ill. App. 3d 1040 (1992); *Shroat v. Robins*, 7 Ill. App. 3d 293 (1972).

¶ 47        Additionally, it is far from clear that the proposed amended complaint would rectify the issues that led to dismissal, including the comingling of negligent supervision and negligent retention claims in the same count in violation of section 2-603(b) (735 ILCS 5/2-603(b) (West 2020)) and, as discussed above, the failure to allege sufficient facts about the nature of the relationship between the two defendants. See *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 20 (noting that "whether the proposed amendment would cure the defective pleading" is a factor to consider in whether the circuit court abused its discretion in denying leave to amend).

¶ 48        Finally, with respect to the circuit court's denial of plaintiffs' motion for reconsideration, plaintiffs' appellate arguments never get off the ground. Reviewing courts of this state have repeatedly held that, consistent with the language of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), failure to argue an issue results in forfeiture. *People v. Griffin*, 2024 IL 128587, ¶ 70 (citing *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) (collecting cases)). Although plaintiffs' notice of appeal identifies the order denying reconsideration of the dismissal with prejudice, plaintiffs fail to set forth the standard of review for the denial of a motion to reconsider; they fail to even advance an argument directed at the circuit court's denial of that motion. Thus, plaintiffs have forfeited this contention and we will not consider it.

¶ 49        Accordingly, it is not apparent from the record that the circuit court erred.

¶ 50                        III. CONCLUSION

¶ 51        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 52        Affirmed.